IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | 2:11cr188 |
| ) | **Electronic Filing** |
| **AINSWORTH KERR** ) | |
| **JAMES OMAR ROMELO** ) | |
| **TANDREA MITCHELL** ) | |

## MEMORANDUM AND ORDER OF COURT

On August 18, 2011, a grand jury returned a two-count indictment against Tandrea Mitchel ("defendant") and two co-defendants charging each of them at count one with (1) conspiring to possess with intent to distribute 100 kilograms or more of marijuana, from in or around January 1, 2009, to on or about February 24, 2010, in violation of 21 U.S.C. § 846. A superseding indictment was filed on June 26, 2012, and charged that the conspiracy existed , from in or around January 1, 2009, to on or about August 30, 2010. Presently before the court are defendant's Motion to Produce Evidence the Government Intends to Use Under Rules 404(b) and 609, Motion for Bill of Particulars, Motion for Starks Hearing, Motion for Pretrial Hearing on Admissibility of Alleged Co-conspirator Statements and Motion to Exclude Evidence or Quash Subpoenas.[1] For the reasons set forth below, defendant's motions for notice under Rule 404(b), will be granted in part and denied in part, and her motions for a bill of particulars and a James hearing will be denied.

In the motion for a bill of particulars defendant seeks an order directing the government to disclose the "identities of the alleged known co-conspirators and the place or places where the

---

[1] Defendant filed these motions in response to and in conjunction with the original indictment. Defendant has moved to have the motions deemed applicable to the superseding indictment. The motion will be granted.

conspiracy allegedly took place." In the motion for a Starks hearing, to produce material witness and to suppress audiotape recordings, defendant seeks identification of "the cooperating witness," the production of information regarding any threats, promises, and inducements given or promised to the witness, a hearing on the voluntariness of the witness' consent to the recorded conversations, and suppression of the conversations in the event the government fails to prove the consent was voluntary.[2] In the motion for a determination of the admissibility of co-conspirator statements defendant seeks the identification of all such statements and a evidentiary hearing to determine whether such statements were made by a co-conspirator during the course of the conspiracy and in furtherance thereof.

The government has filed a response acknowledging its discovery obligations under Fed. R. Crim. P. 16 and Brady v. Maryland, 386 U.S. 88 (1963). In this regard the government generally outlines the evidence it has and indicates that it has disclosed to defendant the affidavit pertaining to the search warrant used to obtain 540 pounds of marijuana, copies of all recorded conversations, and the Rule 16 material available at arraignment (including numerous case agent reports and copies of documents discovered during the search of a townhouse). It similarly has invited defense counsel to review the physical and documentary evidence in the government's possession. It thus asserts that it has already provided defendant with more information than it is required to disclose and objects to the disclosure of the additional information sought through the motion for a bill of particulars and/or the motion on the admissibility of co-conspirator statements. It avers that it is unaware of any "Brady material" (which apparently is intended to address only Brady exculpatory information and does not address the disclosure of Brady impeachment material other than to assert that a defendant's due process rights may be fully

---

[2] An evidentiary hearing on the voluntary nature of the co-operating witness' consent was held on June 20, 2012. The request that the government be compelled to produce the witness for that hearing was denied and a ruling was made on the record that the co-operating witness had voluntarily given consent to be recorded.

2

protected if disclosure is made "the day the witness testifies." It therefore appears to be implicitly requesting leeway to provide any such Brady impeachment and Giglio-type material with the disclosure of Jencks Act material, which it has agreed to disclose one week prior to trial.[3]

To the extent defendant implicitly seeks discovery beyond what she is entitled to under Rule 16 through the two referenced motions, defendant's motions will be denied for a number of reasons. First, the government has complied with its obligations under Rule 16 to date, and has provided defendant with access to a substantial amount of information. Such disclosure is well beyond what is required to be disclosed.

Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial. United States v. Fioravanti, 412 F.2d 407, 410 (3d Cir.), cert. denied, 396 U.S. 837 (1969). Nor is the rule designed to provide a defendant with verification that the use of anticipated evidence at trial by the defense is not vulnerable to attack by evidence within the government's possession. United States v. Randolph, 456 F.2d 132, 136 (3d Cir.), cert. denied, 408 U.S. 926 (1972). In fact, in sharp contrast with these propositions, the United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 67-68 (3d

---

[3]The Jencks Act provides that any statement or report made or adopted by a government witness which relates to the subject matter of the witness' testimony must be disclosed after the witness has testified under direct examination. See 18 U.S.C. § 3500(b).

3

Cir. 1994). As a general matter these other areas are limited to the Jencks Act and materials available pursuant to the so-called "Brady doctrine." Id. at 68.[4]

Second, the government has no obligation to produce an outline of the evidence it will offer at trial. A defendant is not entitled to conduct a wholesale review of the government's investigation. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (there is no general constitutional right to discovery in a criminal case). Nor is a defendant entitled to obtain a list of the government's witnesses through discovery. See United States v. DePasquale, 740 F.2d 1282, 1294 (3d Cir. 1984), cert. denied, 469 U.S. 1228 (1985). Similarly, there is no authority to support a defendant's request for the specifics of each government witness' proposed testimony. See Fioravanti, 412 F.2d at 410 (a defendant has no right to discover the minutia of the government's evidence or the manner in which it will be used). And even assuming arguendo that this court has some residual discretion to order the pretrial disclosure of the government's evidence in appropriate circumstances, the current record falls woefully short of presenting sufficient grounds to justify such an extraordinary measure.

Third, the statements of co-conspirators, whether indicted or not, are not available to the defendant under Rule 16. 8 J. Moore, MOORE'S FEDERAL PRACTICE, 16.04[1], 16-64. Every circuit court to address the issue has held that such statements are not discoverable under Rule 16 and that disclosure of such statements is governed by the Jencks Act, regardless of whether the co-conspirator will be called as a witness. See United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir.), cert. denied, 488 U.S. 840 (1988); United States v. Roberts, 811 F.2d 257, 258 (4th Cir. 1987) (en banc); United States v. Diaz, 834 F.2d 287 (2d Cir. 1987), cert. denied, 488 U.S.

---

[4] This view continues to reflect the prevailing practice in this district. See e.g. United States v. Claus, 2010 WL 3522117, *5 (W.D. Pa. Sept. 08, 2010) (McVerry, J.); United States v. Wise, 2010 WL 1375400, *1 (W.D. Pa. Apr. 6, 2010) (Cohill, J.); United States v. Adusei, 2009 WL 2045619, *8 (W.D. Pa. July 14, 2009) (Diamond, J.); United States v. Wecht, 2007 WL 2343845, *1 (W.D. Pa. Aug. 15, 2007) (Schwab, J.).

817 (1988). These courts have reasoned that disclosure of such statements is governed by the Jencks Act because the government must present some witness who will testify to the unavailable co-conspirator's statements. Accordingly, to the extent defendant requests pretrial disclosure of the actual co-conspirator statements through the identification of records and information bearing on any non-witness declarants whose statements are to be offered at trial, the request must be denied.[5]

Another area for potential dispute concerns the disclosure of impeachment material. This includes the timing of any such materials and the production of any "criminal convictions," promises of leniency or similar sources of impeachment evidence concerning any government witness. As a general matter, a defendant's requests for impeachment material such as the criminal records of and promises or inducements made to prospective government witnesses raise issues under Brady and the Jencks Act. In Brady v. Maryland, the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of Brady when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. See Giglio v. United States, 405 U.S. 150, 154 (1972); see also United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984); Ramos, 27 F.3d at 68 (Brady material includes "materials that might affect the jury's judgment of the credibility of a crucial prosecution witness") (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992)). In United States v. Agurs, 427 U.S. 97, 107 (1976), the Supreme Court modified the Brady rule to

---

[5] In contrast, to the extent the government has information that significantly undermines the truthfulness of a critical non-witness declarant, such information may well fall within the scope of Brady even though discovery of the specific statement is not otherwise available.

5

require the government to disclose exculpatory evidence even when the defendant has not requested the information. Id. at 107; see also United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

The so-called Brady doctrine generally is understood as a rule of minimum fairness. United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984). It establishes a prosecutorial obligation rather than a general rule of pretrial discovery. The government thus has an obligation to produce favorable material bearing on a defendant's culpability or punishment as well as material bearing on the credibility of any witness who will be used to establish material matters at trial. This obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's principal case. See Higgs, 713 F.2d at 42; United States v. Bocra, 623 F.2d 281, 285 (3d Cir. 1980).

It is well-settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." Higgs, 713 F.3d at 44; United States v. Blackwell, 954 F. Supp. 944, 968 (D.N.J. 1997). A district court has general discretionary authority to order the pretrial disclosure of Brady impeachment material and that discretion is to be exercised in a manner which "ensure[s] the effective administration of the criminal justice system." Government of Virgin Islands v. Martinez, 847 F.2d 125, 127 (3d Cir. 1988); Blackwell, 954 F. Supp. at 968. The government indicates it has disclosed and will continue to disclose all such requested material when it becomes available, and in any event it will make all such information available when it makes its Jencks Act disclosures, which it has committed to do one week prior to trial.

While the court recognized in Higgs that a defendant's due process rights to a fair trial are not violated where the disclosure of Brady impeachment material occurs in time to be used

6

effectively, subsequent cases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of Brady material, including impeachment and so-called Higgs materials. See Starusko, 729 F.2d at 261 (citing United States ex rel. Marzeno v. Gengler, 574 F.2d 730, 739 (3d Cir. 1978); United States v. Kaplan, 554 F.2d 577, 578 (3d Cir. 1977)); see also United States v. Giampa, 904 F. Supp. 235, 281 (D.N.J. 1995); Blackwell, 954 F. Supp. at 968. The government's early production of Higgs-type impeachment material may well overlap with its subsequent production under the Jencks Act and provide defendant with "advanced" notice of certain witnesses the government intends to use at trial. Nevertheless, the court notes that after disclosure is made defense counsel can more fully advise her client regarding the appropriate development of the case, including consideration of any plea agreement offered by the government, and prepare for the orderly and effective presentation of evidence at trial. In light of all of the circumstances, the government is encouraged to disclose all Brady impeachment material without further delay, and in any event it will be ordered to produce all such material no later than ten business days prior to trial.[6]

Defendant requests timely notice of any prior bad acts the government intends to introduce pursuant to Fed. R. Evid. 404(b). The government acknowledges its obligations under

---

[6] Of course, this ruling has no bearing on the government's disclosure of information that falls solely under the Jencks Act. It is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government witness' testimony on direct examination. See United States v. Hill, 976 F.2d 132, 140 (3d Cir. 1992); United States v. Murphy, 569 F.2d 771, 773 (3d. Cir.), cert. denied, 435 U.S. 955 (1978). Although courts lack the authority to order the early disclosure of Jencks material, the Third Circuit nevertheless has endorsed and encouraged the government's prevailing practice of committing to disclose Jencks Act material prior to trial. See Murphy, 569 F.2d at 773; Hill, 976 F.2d at 140. The government is encouraged to comply with the representation that it will disclose all Jencks material not falling within the scope of other aspects of this court's order five business days prior to trial.

Fed. R. Evid. 404(b), and states that it has not determined what evidence, if any, it will sekk to offer under Rule 404(b).

The government is required to give notice of its intention to use Fed. R. Evid. 404(b) evidence prior to trial. Rule 404(b) specifically provides "that upon request by the accused the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any evidence it intends to introduce at trial."

The rule requires only the disclosure of the general nature of the evidence the government intends to introduce. A demand for specific evidentiary detail, such as dates, times, places and persons involved is overly broad. See United States v. Alex, 791 F. Supp. 723 (N.D. Ill. 1992). Thus the disclosure of "the general nature" of such evidence is that which is sufficient to put a defendant on notice as to which of his or her past episodes of conduct may be used by the government at trial.

What constitutes "reasonable notice in advance of trial" is determined by the circumstances and complexity of the prosecution. In Alex, the court ordered disclosure of Rule 404(b) evidence seven days prior to trial. In contrast, the court in United States v. Williams, 792 F. Supp. 1120, 1133 (S.D. Ind. 1992), noted generally that disclosure within ten days prior to trial constitutes reasonable advanced notice. Similarly, in United States v. Evangelista, 813 F. Supp. 294, 302 (D.N.J. 1993), the court ruled that disclosure ten business days prior to trial is sufficient notice.

Here, the rule provides defendant with the right to formal notice of all potential Rule 404(b) evidence which the government intends to introduce at trial. The government has represented that it will provide the required notice ten business days prior to trial, which is in line with the authorities noted above. Accordingly, the court will grant defendant's Rule 404(b)

8

motion in part and direct the government to provide the required general notice no later than ten business days prior to trial.

The caption of defendant's motion also seeks notice of the government's intended use of prior convictions under Rule 609, but the matter is not further briefed or discussed in the body of the motion. The government indicates that it is unaware of any prior criminal record of defendant, but should the situation change, it will seek to introduce such evidence under Rule 609(a)(1) in the event defendant chooses to testify.

Rule 609(b) requires the government to provide advanced written notice of its intent to use a conviction that is more than 10 years old (or where 10 years has elapsed since the release of the witness from confinement, whichever is later) for impeachment purposes. Advanced notice in these circumstances is required in order to "provide the adverse party with a fair opportunity to contest the use of such evidence." Fed. R. Evid. 609(b). There is no similar disclosure requirement under Rule 609(a).[7] Consequently, the court can only order the government to provide advanced written notice of its intent to proffer any Rule 609(b) evidence.

As indicated above, the government has indicated it is unaware of any conviction falling within the ambit of Rule 609(b). To the extent it becomes aware of any such evidence, it will be required to provide notice of its intent to use such evidence at the same time it provides notice under Rule 404(b), at least ten business days prior to trial.

Defendant also moves for a bill of particulars, contending she is entitled to certain categories of information in order to avoid surprise at trial, permit the proper development of her own investigation and defense, and ensure against a second prosecution for the same offense. Specifically, she requests the government to provide: (1) the identity of all alleged known co-conspirators and the place or places where the conspiracy took place. The government opposes

---

[7] Rule 609(a) is limited to the use of prior convictions and does not authorize the use of arrests or uncharged misconduct to impeach the testimony of an accused.

the motion. It notes that defendant's specific requests are in contravention of the controlling case law governing the exercise of discretion in deciding a motion for a bill of particulars and it has disclosed a significant amount of information, including the affidavit and all intercepted telephone recordings, and extended an invitation to review all of the physical and documentary evidence in its possession, all of which is more than sufficient to avoid surprise, prepare an adequate defense, and defend against any subsequent prosecution. Consequently, it contends that defendant's motion must be denied.

A bill of particulars should be granted when the indictment is so vague that it fails to advise the defendant of the nature of the charges. United States v. Addonizio, 451 F.2d 49, 64 (3d Cir.), cert. denied, 405 U.S. 936 (1972). In Addonizio, the Third Circuit set forth three general scenarios where a bill of particulars is appropriate: (1) to inform the defendant of the nature of the charges being brought against him so that he may adequately prepare his defense; (2) to avoid undue surprise at trial; and (3) to protect against double jeopardy because of an inadequately described offense. Addonizio, 451 F.2d at 63-64. In other words, a bill of particulars may be used to inform the defendant of the nature of the charges so that he or she may prepare an adequate defense, avoid surprise during trial and protect against any potential second prosecution for the same offense. United States v. Rosa, 891 F.2d 1063, 1065 (3d Cir. 1989).

The purpose of a bill of particulars is to provide the defendant with the minimum amount of information necessary to allow the preparation of an adequate defense. It is not intended to equip a defendant with the fruits of the government's investigation. United States v. Smith, 776 F.2d 1104, 1111 (3d. Cir. 1985). Where the indictment provides sufficient information to place the defendant on notice of the charged criminal conduct, requests seeking the "'when, where and how'" of any overt acts are "tantamount to a request for wholesale discovery of the

government's evidence[,]" and therefore properly are denied. United States v. Adusei, 2009 WL 2045619 *8 (W.D. Pa. 2009) (citing United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975)).

"In ascertaining whether a bill of particulars is appropriate, the court may consider not only the indictment, but also all the information which has been made available to the defendant." United States v. Fischbach & Moore, Inc., 576 F. Supp. 1384, 1389 (W.D. Pa. 1983) (citing United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972), cert. denied, 409 U.S. 914 (1972)). The motion properly is denied where the record as a whole demonstrates that ample opportunity exists for adequate preparation of the defense. Kenny, 462 F.2d at 1212.

The record provides defendant with the particulars of the offense in more than sufficient detail. First, the indictment identifies: the specific duration of the alleged offense; the controlled substance purportedly distributed; the minimum quantities involved; and the federal laws allegedly violated. Second, the government has provided defendant with all Rule 16 materials and an additional amount of discovery, including the affidavit, documents seized during the search, copies of all intercepted recordings, and other documents generated from the underlying investigation. Defense counsel has been provided with all inculpatory recordings and a summary of the government's evidence is set forth in its omnibus response. Finally, an invitation has been extended to defense counsel to review all physical and documentary evidence in the government's possession.

It is readily apparent that the information already disclosed more than provides the particulars of the alleged offense. Consequently, defendant's ability to avoid surprise, prepare an adequate defense, and defend against any subsequent prosecution has not been impaired and her motion for a bill of particulars must be denied.

Defendant seeks what is known as a "James" hearing in order to ascertain if statements of co-conspirators are admissible under Rule 801 of the Federal Rules of Evidence. Rule

801(d)(2)(E) exempts from the hearsay rule "a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." In determining whether the co-conspirator exception applies in a particular case, the trial court must determine, by a preponderance of the evidence, that there was a conspiracy between the declarant and the party against whom the evidence is offered; and that the hearsay statements sought to be admitted were made during the course of the conspiracy and in furtherance of its goals. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991).

A pretrial hearing to establish such a foundation for a co-conspirator statement is a matter within the trial court's discretion. The Third Circuit, under certain circumstances, has allowed such statements to be admitted subject to the government making the required showing before the close of its case. United States v. Continental Group, Inc., 603 F.2d 444, 456-57 (3d Cir. 1979), cert. denied, 444 U.S. 1032 (1980). It has stated:

> While the practicalities of a conspiracy trial may require that hearsay be admitted "subject to connection," the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.

United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971) (quoting with approval United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969), cert. denied, 397 U.S. 1028 (1970)).

In the instant action, one of the co-defendants has already pled guilty. The government has outlined in general its evidence in the case and given defendant access to all of its physical and documentary evidence. Defendant has identified another purported member of the criminal operations in her various pretrial motions. She has received all recorded conversations between her and the so-called "CI." Given this backdrop, defendant has not shown any basis for the relief requested and the Court does not believe it will have any difficulty making rulings during trial on

the admissibility of any proffered co-conspirator statements. Accordingly, defendant's motion will be denied.

The remaining aspects of defendant's Motion for <u>Starks</u> Hearing seeks a pretrial hearing on the admissibility of audiotape recordings and to suppress those recordings because the inaudible and unintelligible portions are so substantial as to render them untrustworthy as a whole. The recording device purportedly functioned poorly and the sound is extremely muffled and masked by background noise. All of this will lead to improper speculation by the jury. Defendant avers that these multiple problems with the recordings render them inadmissible.

The Third Circuit has held that "the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings….'" <u>United States v. Starks</u>, 515 F.2d 112, 121 (3d Cir. 1975) (quoting <u>United States v. Knohl</u>, 379 F.2d 427, 440 (2d Cir. 1967), <u>cert.</u> <u>denied</u>, 389 U.S. 973 (1967)). The following factors provide useful guidance in assessing the admissibility of a challenged recording: (1) the capability of the recording device to capture the conversation to be offered into evidence; (2) the ability of the operator to use the device competently; (3) the recording appears to be or is authentic and correct; (4) that changes, additions or deletions have not been made; (5) that the recording properly has been preserved; (6) the speakers are identified; and (7) the conversation elicited appears to have been made voluntarily and in good faith, and without any kind of inducement. <u>Id.</u> at n.11 (quoting <u>United States v. McKeever</u>, 169 F. Supp. 426, 430 (S.D. N.Y. 1958)).

The government acknowledges its burden under <u>Starks</u> to prove admissibility by clear and convincing evidence on all evidence sought to be admitted. It contends that an insufficient level of doubt has been raised. Specifically, it intends to call the confidential informant as a witness at trial and therefore any final determination as to admissibility must await until the record is fully

13

developed. In addition, it notes that it will provide transcripts as an aid to the jury and defendant and the court will be in a better position to evaluate any specific portion defendant wishes to challenge after final decisions have been made as to which portions of the recordings the government seeks to admit and which specific portions therein defendant wishes to challenge as inaudible or unintelligible.

In light of the above and after a preliminary review of the recordings, defendant's motion to suppress all of the records as unreliable, unintelligible and inviting speculation will be denied. This ruling will be entered without prejudice to defendant's right to challenge any specific portion or part of the recordings the government actually seeks to introduce.

Finally, defendant filed a motion seeking to exclude evidence or quash subpoena based on the government calling witnesses before the grand jury well after the date in original indictment was returned. As noted in the government's opposition to this motion, a grand jury may continue to investigate the additional criminal culpability of indicted individuals and the information gained from such undertakings properly may be used provided that the grand jury was not utilized for the sole or dominant use of gathering evidence to be used at trial against the indicted defendant. See The Government's Response (Doc. No. 63) at ¶¶ 4-7 (citing among other authority United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845 (1964) (a grand jury's good faith inquiry into additional criminal conduct of the accused falls far short of demonstrating that "the use of a Grand Jury [was] a subterfuge to elicit testimony for use [against the defendant] at [] trial.")

Here, a superseding indictment was returned enlarging the scope of the charged conspiracy by several months. This is a prima facie showing that the inquiry by the grand jury was for more than solely or dominantly gathering evidence to be used against defendant at trial

on an already existing charge. Accordingly, defendant's motion to exclude evidence or quash subpoenas will be denied.

In light of the above, the following order is appropriate.

## **ORDER OF COURT**

AND NOW, this 7th day of September, 2012, for the reasons set forth in the above memorandum, IT IS ORDERED as follows:

1) [73] defendant's motion to treat previously filed motions as filed with respect to the superseding indictment be, and the same hereby is, granted.

2) the government shall:

   a) Abide by and comply with the representations in its response to defendant's motions in a timely manner;

   b) Produce all Rule 16 and Brady exculpatory material forthwith;

   c) Produce all Brady impeachment material no later than ten business days prior to trial; and

   d) The government is encouraged to disclose its Jencks Act material at least a five business days prior to trial;

3) [41] defendant's Motion Requesting Notice Pursuant to Rule 404(b) and 609 of the Federal Rules of Evidence be, and the same hereby is, granted in part. Consistent with the rulings set forth in the memorandum above, the government shall provide written notice of the general nature of any prior acts of misconduct governed by Rule 404(b) which it intends to offer at least 10 business days prior to trial. The government also shall provide written notice of any 609(b) evidence it may use at trial at the same time. The motion is denied in all other aspects;

4) [43] defendant's motion for a bill of particulars be, and the same hereby is, denied;

5) [50] defendant's motion to exclude evidence or quash subpoenas be, and the same hereby is, denied; and

6) [42] the balance of defendant's motion for a <u>Starks</u> hearing and to suppress audiotape recordings be, and the same hereby is, denied to the extent it seeks to preclude as a whole the use of the recorded conversations. This ruling is without prejudice to defendant moving to exclude the use of any specific portion of a recording after the record has been developed at trial and the government has made clear the specific portions of the recordings that it intends to introduce. The motion is denied in all other aspects.

<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc: Almon S. Burke, Jr., AUSA
Marketa Sims, AFPD
Gary I. Rosenberg, Esquire
Michael D. Foglia, Esquire

(*Via CM/ECF Electronic Mail*)